JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
MELANIE L. PROCTOR (CSBN 228971)
Melanie.Proctor@usdoj.gov
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6730
    FAX: (415) 436-6927

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| QIN CHEN,<br>          Plaintiff,<br>v.<br>MICHAEL B. MUKASEY,* United States Attorney General; MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; EMILIO T. GONZALEZ, Director of the Citizenship and Immigration Services; ROBERT S. MUELLER III, Director of the Federal Bureau of Investigation,<br>          Defendants. | No. C 07-4688 HRL<br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>No Hearing By Stipulation and Court Order |

## I. NOTICE OF MOTION

PLEASE TAKE NOTICE THAT Defendants Michael Chertoff, et al., by their attorneys, Joseph P. Russoniello, United States Attorney for the Northern District of California, and Melanie L. Proctor, Assistant U.S. Attorney, hereby move this Court for an order granting summary judgment in Defendants' favor. Defendants' Motion is based on this notice, the points and authorities in support of this motion, the declaration of Michael Cannon, and the pleadings on file in this matter.

---

*Pursuant to Fed. R. Civ. P. 25(d)(1), Michael B. Mukasey is substituted for his predecessor, Alberto Gonzales, as the United States Attorney General.

DEFENDANTS' MOTION
No. C 07-4688 HRL

## II. INTRODUCTION

Plaintiff Chen Qin ("Plaintiff") asks this Court to issue a writ of mandamus, compelling Defendants reach a decision on his application for adjustment of status. Plaintiff's application remains pending because his name check is not yet complete. The facts are undisputed, and Defendants are entitled to judgment as a matter of law. Accordingly, Defendants respectfully ask this Court to grant their motion for summary judgment.

## III. BACKGROUND

On May 13, 2004, Plaintiff filed an I-485 application for adjustment of status, based on his employment. See Complaint, p. 3. Due to an error in recording Plaintiff's change of address, his application was denied in 2005. Id., p. 4. The agency subsequently reopened the application and forwarded the file to San Francisco. Id. Plaintiff's application is ready to be adjudicated except for Plaintiff's pending background and security check Id., p. 5 Plaintiff filed the instant Complaint on September 11, 2007.

## IV. GENERAL PRINCIPLES APPLICABLE TO THIS MOTION

### A. LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is material if the fact may affect the outcome of the case. See id. at 248. The Ninth Circuit has declared that "[i]n considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323-24 (1986).

### B. ADJUSTMENT OF STATUS

Section 245 of the Immigration and Nationality Act, codified at 8 U.S.C. § 1255, authorizes

the Secretary of the Department of Homeland Security ("Secretary")[1] to adjust to permanent residence status certain aliens who have been admitted into the United States. Adjustment of status is committed to the Secretary's discretion as a matter of law. Section 1255(a) expressly provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . <u>may</u> be adjusted by the [Secretary], <u>in his discretion</u> and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence[.]

8 U.S.C. 1255(a) (emphasis added). An applicant for adjustment of status must meet three requirements: he must apply for such status, be eligible to receive an immigrant visa, and the visa must be immediately available to him at the time he applies. Id. Significantly, the statute does not set forth any time frame in which a determination must be made on an application to adjust status. In addition, the regulations setting forth the procedures for aliens to apply to adjust status do not set forth a time frame for adjudication, and allow discretion in how to conduct the adjudication. See 8 C.F.R. § 245 et seq.

Before a decision is rendered on an alien's application to adjust status, U.S. Citizenship and Immigration Services ("USCIS") conducts several forms of security and background checks to ensure that the alien is eligible for the benefit sought and that she is not a risk to national security or public safety. See Exh. A. USCIS also conducts investigations into the bona fides of petitions and applications that have been filed, in order to maintain the integrity of the application process and to ensure that there is no fraud in the application process. See 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison with the Directors of the Federal Bureau of Investigation [("FBI")] and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this chapter in the interest of the internal and border security of the United States"). These checks currently include extensive checks of various law enforcement databases, including the FBI. See

---

[1] On March 1, 2003, the Department of Homeland Security and its United States Citizenship and Immigration Services assumed responsibility for the adjustment program. 6 U.S.C. § 271(b). Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary of Homeland Security. 6 U.S.C. § 551(d).

DEFENDANTS' MOTION
No. C 07-4688 HRL                        3

Exh. A; see also Declaration of Michael Cannon (attached as Exh. B).

The FBI's name check process is quite complex. See Eldeeb v. Chertoff, et al., No. 07-cv-236-T, 2007 WL 2209231, at *4 (M.D. Fla. July 30, 2007). Name checks are performed at the request of a variety of organizations, including the federal judiciary, friendly foreign police and intelligence agencies, and state and local governments. Id. at *3. When the FBI conducts a name check, the name is checked against the FBI's Universal Index, in a four-stage process. Id. at *3. Generally, the FBI employs a first-in, first-served protocol. Id. at *4. However, when an applicant's name check requires a review of numerous FBI records and files, the name check may require additional time until all responsive records are located and reviewed. Id. USCIS determines which name checks are to be expedited. See USCIS Clarifies Criteria to Expedite FBI Name Check (attached as Exh. C). An expedited name check proceeds to the front of the queue, in front of others awaiting processing. Eldeeb, 2007 WL 2209231, at *5.

The FBI processed more than 3.4 million name checks during fiscal year 2006. Id. at *3. The FBI is working as expeditiously as possible to reduce the small percentage of immigration name checks for which a backlog exists. This backlog results from the vast number of requests the FBI receives from USCIS and other customers, as well as the requirement for enhanced security measures existing since September 11, 2001. Id. at *5. A variety of factors play into processing times, including "hits," common names, and expedited name checks. Id. at *4.

C. RELIEF AVAILABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT AND THE MANDAMUS ACT

Judicial review under the APA, 5 U.S.C. § 701, et seq., is specifically precluded where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action, as defined under the APA, also includes "a failure to act." 5 U.S.C. § 551(13). Under 5 U.S.C. § 706(1), a court may compel "agency action unlawfully withheld or unreasonably delayed." The elements of a claim under § 706(1) are the existence of a discrete, ministerial duty; a delay in carrying out that duty; and a determination that the delay was unlawful or unreasonable in light of prejudice to one of the parties. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004); Rockbridge v. Lincoln, 449 F.2d 567, 569-73 (9th Cir. 1971).

The APA does not provide an independent jurisdictional basis. Califano v. Sanders, 430 U.S. 99, 107 (1977); Staacke v. U.S. Department of Labor, 841 F.2d 278, 282 (9th Cir. 1988). Rather, it merely provides the standards for reviewing agency action once jurisdiction is otherwise established. Staacke, 841 F.2d at 282. Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), does not provide an independent basis for jurisdiction; rather, it only expands the range of remedies available in federal courts. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950).

Mandamus is an extraordinary remedy. See Cheney v. United States District Court for the District of Columbia, 542 U.S. 367, 392 (2004) (Stevens, J., concurring); Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). The United States Supreme Court has stated that "[t]he common law writ of mandamus is intended to provide a remedy for a plaintiff only if . . . the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984); see also Kildare v. Saenz, 325 F.3d 1078, 1084 (9th Cir. 2003).

## V. ANALYSIS

### A. DEFENDANT MUELLER SHOULD BE DISMISSED

Courts in this district have recognized that since March 1, 2003, the Department of Homeland Security has been the agency responsible for implementing the Immigration and Nationality Act. See 6 U.S.C. §§ 271(b)(5), 557; Clayton v. Chertoff, et al., No. 07-cv-02781-CW, slip. op., at 4-7 (N.D. Cal. Oct. 1, 2007); Konchitsky v. Chertoff, No. C-07-00294 RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); Dmitriev v. Chertoff, No. C 06-7677 JW, 2007 WL 1319533, at *4 (N.D. Cal. May 4, 2007). Accordingly, the only relevant Defendants here are those within the Department of Homeland Security, and Defendants Michael B. Mukasey and Robert S. Mueller should be dismissed.

///
///
///
///
///

B.  THE COURT LACKS JURISDICTION TO COMPEL PROCESSING WITHIN A CERTAIN TIME FRAME

For the record, Defendants argue that the Court lacks jurisdiction to compel processing of Plaintiff's application with a certain time frame.[2] District courts that have concluded that the Mandamus Act vests the courts with subject matter jurisdiction have too firmly rested their analysis upon an inapplicable provision in 8 C.F.R. § 245.2(a)(5)(i). See, e.g., Yu v. Chertoff, No. C06-7878 CW, 2007 WL 1742850, at *2 (N.D. Cal. June 14, 2007) (finding that 8 C.F.R. § 245.2(a)(5) requires a decision); Quan v. Chertoff, No. C06-7881 SC, 2007 WL 1655601, at *3 (N.D. Cal. June 7, 2007) (same); Fu v. Gonzales, No. C07-0207 EDL, 2007 WL 1742376, at *3 n.2 (N.D. Cal. May 22, 2007) (same). The non-discretionary nature of § 245.2's notice requirement does not extend to the pre-adjudication processing of which Plaintiff here complains, a process that is statutorily defined as discretionary. 8 U.S.C. § 1252(a)(2)(B). The pre-adjudication investigation and processing are also discretionary beyond the language of the controlling statute.

The background investigation is discretionary as a matter of common sense. The agencies must be able to make determinations in how to proceed with an investigation on a case-by-case basis, once enlightened by the information received at points along the investigative process. See e.g., 8 C.F.R.§ 245.6 (an "interview may be waived . . . when it is determined by the Service that an interview is unnecessary"); id. at § 103.2(b)(7) ("[The Service] may direct any necessary investigation") (emphasis added); id. at § 103.2(b)(18) ("A district director may authorize withholding adjudication"). The use of "may," in regulations that are more specifically addressed to the processing of adjustment applications than § 245.2's provision for final adjudication and the notice of such final agency determination, provides discretion to the manner of the processing of applications beyond that expressed in 8 U.S.C. § 1252(a)(2)(B). Thus, the process of adjudication is completely discretionary. See Spencer Enterprises, Inc. v. United States, 345 F.3d 683, 690 (9th Cir. 2003). Accordingly, the Court lacks jurisdiction to compel USCIS to render a decision on

---

[2] Defendants acknowledge this Court's decision in Mahdavi v. Gonzales, No. 07-2193, 2007 WL 4197425 (Nov. 21, 2007) (finding the Court has jurisdiction).

DEFENDANTS' MOTION
No. C 07-4688 HRL                    6

Plaintiff's application.

Furthermore, mandamus is reserved for those situations in which the plaintiff's claim is clear and certain. Kildare, 325 F.3d at 1078. Here, as explained below, because Plaintiff has failed to establish that action on his application has been unreasonably delayed, he has failed to show that his claim is so clear and certain that mandamus is justified. USCIS has exercised its discretion in determining which name checks should be expedited. See Exh. C. Plaintiff's case meets none of these criteria.[3]

### C.   THE DELAY IS REASONABLE

Plaintiff argues the delay in his case constitutes unreasonable delay. To determine whether a delay is egregious, such that relief under the APA is warranted, several circuits have adopted the six-part test first articulated in Telecomm. Research and Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC"). The six considerations outlined in TRAC are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulations are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay;
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d at 80.

The court in Sze v. INS, No. C-97-0569-SC, 1997 WL 446236, at *8 (N.D. Cal. Jul. 24, 1997), which applied the TRAC test to a similar complained-of delay in the immigration context, found the fourth factor to be the most persuasive. Id. at *8. The court, in refusing to grant relief under the APA, held that "the reasonableness of administrative delays must be judged in light of the resources available to the agency." Id. The court also recognized that by granting relief, it "would,

---

[3] Plaintiff asks the Court to compel Defendants to expedite his name check; however, as set forth above, the adjudication process is discretionary. Discretionary actions, such as decisions to expedite name checks, are beyond the reach of mandamus. Heckler, 466 U.S. at 616.

DEFENDANTS' MOTION
No. C 07-4688 HRL                    7

1  at best, reorder the queue of applications, thereby leading to little net benefit." Id.; see also Liberty
2  Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (Department of Labor's decision on
3  how to handle competing applications for permanent labor certifications – on a first in, first out
4  processing – "is deserving of deference" because any grant of relief to petitioners would result in
5  "no net gain" – petitioners would move to the front of the queue, at the expense of other similarly
6  situated applicants.).

7      Here, granting Plaintiff's request for the court to compel the FBI to more expeditiously
8  resolve his name check comes at the expense of other similarly-situated applicants.  Furthermore,
9  the court found that the agency, rather than the court was in a "unique–and authoritative–position
10 to view its projects as a whole, estimate the prospects for each, and allocate its resources in the
11 optimal way."  Id. (quoting In re Barr Labs., Inc., 930 F.2d 72, 76 (D.C. Cir. 1991)).

12     Congress has declined to set a time frame upon processing adjustment of status name checks,
13 the cause of the delay in the case at hand.  Contra Intelligence Reform and Terrorism Prevention Act
14 of 2004, Pub. L. No. 108-458, § 3001(g), 118 Stat. 3638 (2004) (requiring Government personnel
15 security checks to be completed within a certain timeframe).  Requiring the FBI to divert resources
16 to complete Plaintiff's name check by an arbitrary deadline or before other immigration applicants'
17 would detract from the FBI's efforts to reduce waiting times for all applicants.  Moreover, it would
18 be unfair to applicants who have been waiting longer than Plaintiff.  Even in cases involving
19 statutory deadlines, which do not apply here, courts have declined to grant such relief.  See, e.g., In
20 re Barr Labs., Inc., 930 F.2d at 75; Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d
21 1094, 1101 (D.C. Cir. 2003).  Moreover, as discussed in Liberty Fund, "where resource allocation
22 is the source of the delay, courts have declined to expedite action because of the impact on
23 competing priorities."  Liberty Fund, 394 F. Supp. 2d at 117.

24     The other TRAC factors also disfavor granting the requested relief.  As explained above,
25 Congress has imposed no deadline on the name check process.  The nature and extent of the interests
26 at stake here also weigh heavily in favor of denying the request for a premature decision on this
27 application.  Plaintiff's interest in an expedited decision is minimal and does not implicate human
28 health and welfare.  Plaintiff remains free to work and travel within the United States.  On the other

hand, the FBI has an important national security interest in ensuring a thorough and accurate result for his background check. Defendant USCIS cannot render a decision on Plaintiff's application in the absence of a complete background investigation.

## VI. CONCLUSION

For the foregoing reasons, the Government respectfully asks the Court to dismiss Defendants Mukasey and Mueller, and grant the remaining Defendants' motion for summary judgment as a matter of law.

Dated: January 15, 2008                                   Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


         /S/
MELANIE L. PROCTOR
Assistant United States Attorney
Attorneys for Defendants