EXHIBIT D

1  SCOTT N. SCHOOLS (SC 9990)
   United States Attorney
2  JOANN M. SWANSON (CSBN 88143)
   Chief, Civil Division
3  MELANIE L. PROCTOR (CSBN 228971)
   Melanie.Proctor@usdoj.gov
4  Assistant United States Attorney

5     450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
6     Telephone: (415) 436-6730
      FAX: (415) 436-6927
7
   Attorneys for Defendants
8
                    UNITED STATES DISTRICT COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10
                          SAN JOSE DIVISION
11
   QIN CHEN,                      )   No. C 07-4688 HRL
12                                )
              Plaintiff,           )
13                                )
       v.                         )
14                                )
   MICHAEL B. MUKASEY,* United States )
15 Attorney General; MICHAEL CHERTOFF, )   DECLARATION OF CATARINA
   Secretary of the Department of Homeland )  ROBLES
16 Security; EMILIO T. GONZALEZ, Director )
   of the Citizenship and Immigration Services; )
17 ROBERT S. MUELLER III, Director of the )
   Federal Bureau of Investigation,  )
18                                )
              Defendants.          )
19 _____)

20     I, Catarina Robles, do hereby declare and say:

21     1.    I am employed by the United States Department of Homeland Security (DHS), U.S.

22 Citizenship and Immigration Services (USCIS), formerly known as the Immigration and

23 Naturalization Service (INS). I am employed as an Adjudications officer at the San Francisco

24 District Office, in the Adjustment Branch of the Adjudications Unit which oversees the adjudication

25 of applications for Adjustment of Status.

26     2.    I make this declaration based upon my personal knowledge and information made

27

28 *Pursuant to Fed. R. Civ. P. 25(d)(1), Michael B. Mukasey is substituted for his predecessor,
   Alberto Gonzales, as the United States Attorney General.
   ROBLES DECLARATION
   07-4688

1 known to me in the course of my professional duties and responsibilities.

2     3. When an alien applies to the USCIS for naturalization to United States citizenship, or to adjust his status, the USCIS conducts several security and background checks to insure that the alien is eligible for the benefit, and does not pose a risk to the national security or to the public safety. In addition to record checks of the alien applicant against the United States Department of Homeland Security's own immigration record(s) systems, these background checks include, but are not limited to (a) Federal Bureau of Investigation ("FBI") check(s) for criminal history records on the alien applicant; (b) a check against the DHS-managed Interagency Border Inspection System ("IBIS"), which contains records and "watch list" information from more than twenty (20) federal agencies, and which includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes; unlawful activities, or suspected of terrorism-related activity; and (c) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed in the FBI's fingerprint check or in the IBIS check.

    4. On occasion, these background checks have revealed significant derogatory information regarding alien applicants for immigration benefits, including applicants seeking adjustment of status to Lawful Permanent Residency and applicants for naturalization to United States citizenship, which has resulted in the alien being found ineligible for adjustment of status, naturalization, or other immigration benefits, and in the USCIS' denial of the benefits' application. In many instances, the disqualifying information relating to the alien applicant has been discovered as a result of the IBIS, FBI or other background check(s), but it has not been revealed by the fingerprint check alone.

    5. If a background or security check reveals derogatory information on the alien (i.e. "a hit"), the USCIS works with other divisions within the DHS and/or other law enforcement and/or intelligence agencies, as necessary, to obtain all available information concerning the derogatory record.

    6. Although an alien's immigration file may reflect that an FBI fingerprint check was conducted, these checks frequently do not reveal the types of derogatory information described above, particularly when it is not information that has resulted in an arrest or criminal conviction.

ROBLES DECLARATION
07-4688

2

For example, persons on a "watch list" who are suspected of engaging, or having engaged, in terrorist activity, will not necessarily be identified through an FBI fingerprint check, but could be identified through an IBIS record check or an FBI name check of investigation databases.

7. The attached Fact Sheet explains the different types of checks that must be completed. (See Fact Sheet, dated April 25, 2006, a true and correct copy of which is attached hereto as Exhibit 1). In addition to record checks of the alien applicant against United States Department of Homeland Security's own immigration record(s) systems, these background checks include, but are not limited to (a) FBI fingerprint check for criminal history records on the alien applicant; (b) a check against the DHS-managed Interagency Border Inspection System (IBIS). The IBIS system contains records and information from more than 20 federal law enforcement and intelligence agencies including the Central Intelligence Agency (CIA), FBI and other divisions of the U.S. Department of Justice, the Department of State, DHS Customs and Border Protection (CBP) and other DHS agencies; and (c) an FBI Name Check, which is run against FBI investigative databases containing information that is not necessarily revealed in the FBI's fingerprint check or IBIS check. The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement agencies.

8. All files on the background check shelf are audited regularly in order to identify those in which a response from the FBI has been received. This audit is conducted at least every week. In this manner the agency ensures that as FBI responses are received, files are expeditiously released for adjudication.

9. Although in the majority of FBI name checks no matches are found, some cases involve complex or highly sensitive information and cannot be resolved quickly.

10. Resolving name checks is a multi-agency effort with a central system that combines information from these various sources and databases to compile information regarding national security risks, public safety concerns, and other law enforcement concerns.

11. For most applicants, USCIS can quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. However, due both to the sheer volume of security checks USCIS conducts, and the fact that USCIS

ROBLES DECLARATION
07-4688                                3

1  must await responses from the FBI or other relevant agencies that conduct some of the required
2  security checks, some delays on individual applications are unavoidable and may be lengthy.
3  Moreover, in some cases a background or security check will reveal that positive (derogatory)
4  information on the subject alien is possessed by some agency other than USCIS without necessarily
5  revealing the substance of that information. In such cases, USCIS works closely with the other law
6  enforcement or intelligence agencies to obtain all available information concerning the positive
7  result in order to properly evaluate its significance. Even where the FBI or a third agency has
8  provided a final response, a case may still be considered pending where the response requires further
9  investigation or review by USCIS or another agency. It is vitally important to thoroughly screen
10 each applicant in order to resolve all concerns of a law enforcement or national security nature
11 before determining that an individual is eligible for an immigration benefit.

12.  USCIS reports the average processing times for specific applications and petitions on the USCIS website. This information reflects only average processing times on the date the information is published. Average processing times fluctuate widely and will sometimes even regress for a specific form type due to a number of factors, including a reallocation of agency resources, reordering of the agency's priorities, and other reasons. Additionally, not every application will require the same level of inquiry. Some may require a more detailed level of review and or investigation from either the USCIS or other agencies for a number of reasons ranging from the alien's eligibility for the benefit sought to national security concerns. Accordingly, even when it appears that the adjudication of a particular application is outside the average processing time, this does not establish that the delay is unreasonable or even due to factors within the control of USCIS.

13.  The FBI has an established procedure of processing FBI Name Check requests from USCIS chronologically based on the date the request is forwarded. It is important to note that whenever a particular application or petition receives expedited processing and is moved up in the queue, it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date.

14.  I have reviewed the administrative file of the plaintiff, Qin Chen, and thus am familiar with the facts and circumstances of the case.

15. The record reflects that Qin Chen filed an application for adjustment of status in 2004 which was denied on October 7, 2005 by the Philadelphia USCIS office because he failed to appear for an interview. However, he had submitted a change of address form. Accordingly, on October 24, 2005, the San Jose Sub office reopened the case based on a USCIS motion. On February 14, 2006, Plaintiff was interviewed in the San Jose office, and the case was continued for pending FBI name check. Once the required security checks are completed, Plaintiff's application will be adjudicated.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __ day of January, 2008 at San Jose, California.

CATARINA ROBLES
Adjudications Officer

*Press Office*
U.S. Department of Homeland Security



# Fact Sheet

April 25, 2006

## Immigration Security Checks—How and Why the Process Works

**Background**

All applicants for a U.S. immigration benefit are subject to criminal and national security background checks to ensure they are eligible for that benefit. U.S. Citizenship and Immigration Services (USCIS), the Federal agency that oversees immigration benefits, performs checks on every applicant, regardless of ethnicity, national origin or religion.

Since 2002, USCIS has increased the number and scope of relevant background checks, processing millions of security checks without incident. However, in some cases, USCIS customers and immigrant advocates have expressed frustration over delays in processing applications, noting that individual customers have waited a year or longer for the completion of their adjudication pending the outcome of security checks. While the percentage of applicants who find their cases delayed by pending background checks is relatively small, USCIS recognizes that for those affected individuals, the additional delay and uncertainty can cause great anxiety. Although USCIS cannot guarantee the prompt resolution of every case, we can assure the public that applicants are not singled out based on race, ethnicity, religion, or national origin.

USCIS strives to balance the need for timely, fair and accurate service with the need to ensure a high level of integrity in the decision-making process. This fact sheet outlines the framework of the immigration security check process, explaining its necessity, as well as factors contributing to delays in resolving pending cases.

**Why USCIS Conducts Security Checks**

USCIS conducts security checks for all cases involving a petition or application for an immigration service or benefit. This is done both to enhance national security and ensure the integrity of the immigration process. USCIS is responsible for ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens by screening out people who seek immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. These investigations require time, resources, and patience and USCIS recognizes that the process is slower for some customers than they would like. Because of that, USCIS is working closely with the FBI and other agencies to speed the background check process. However, USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take.

**How Immigration Security Checks Work**

To ensure that immigration benefits are given only to eligible applicants, USCIS adopted background security check procedures that address a wide range of possible risk factors. Different kinds of applications undergo different levels of scrutiny. USCIS normally uses the following three background check mechanisms but maintains the authority to conduct other background investigations as necessary:

- **The Interagency Border Inspection System (IBIS) Name Check—** IBIS is a multiagency effort with a central system that combines information from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns. USCIS can quickly check information from these multiple government agencies to determine if the information in the system affects the adjudication of the case. Results of an IBIS check are usually available immediately. In some cases, information found during an IBIS check will require further investigation. The IBIS check is not deemed completed until all eligibility issues arising from the initial system response are resolved.

- **FBI Fingerprint Check—**FBI fingerprint checks are conducted for many applications. The FBI fingerprint check provides information relating to criminal background within the United States. Generally, the FBI forwards responses to USCIS within 24-48 hours. If there is a record match, the FBI forwards an electronic copy of the criminal history (RAP sheet) to USCIS. At that point, a USCIS adjudicator reviews the information to determine what effect it may have on eligibility for the benefit. Although the vast majority of inquiries yield no record or match, about 10 percent do uncover criminal history (including immigration violations). In cases involving arrests or charges without disposition, USCIS requires the applicant to provide court certified evidence of the disposition. Customers with prior arrests should provide complete information and certified disposition records at the time of filing to avoid adjudication delays or denial resulting from misrepresentation about criminal history. Even expunged or vacated convictions must be reported for immigration purposes.

- **FBI Name Checks**—FBI name checks are also required for many applications. The FBI name check is totally different from the FBI fingerprint check. The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement. Initial responses to this check generally take about two weeks. In about 80 percent of the cases, no match is found. Of the remaining 20 percent, most are resolved within six months. Less than one percent of cases subject to an FBI name check remain pending longer than six months. Some of these cases involve complex, highly sensitive information and cannot be resolved quickly. Even after FBI has provided an initial response to USCIS concerning a match, the name check is not complete until full information is obtained and eligibility issues arising from it are resolved.

For most applicants, the process outlined above allows USCIS to quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. Most cases proceed forward without incident. However, due to both the sheer volume of security checks USCIS conducts, and the need to ensure that each applicant is thoroughly screened, some delays on individual applications are inevitable. Background checks may still be considered pending when either the FBI or relevant agency has not provided the final response to the background check or when the FBI or agency has provided a response, but the response requires further investigation or review by the agency or USCIS. Resolving pending cases is time-consuming and labor-intensive; some cases legitimately take months or even

**Immigration Security Checks—How and Why the Process Works**

several years to resolve. Every USCIS District Office performs regular reviews of the pending caseload to determine when cases have cleared and are ready to be decided. USCIS does not share information about the records match or the nature or status of any investigation with applicants or their representatives.